IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| INSTEP SOFTWARE LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case no. 11-C-3947 |
| v. ) | |
| ) | Hon. Judge John W. Darrah |
| INSTEP (BEIJING) SOFTWARE CO., LTD., ) | |
| ) | Magistrate Judge Young Kim |
| Defendant. ) | |

**INSTEP BEIJING'S MOTION TO DISMISS FOR LACK OF DIVERSITY,
UNDER THE FEDERAL ARBITRATION ACT AND
PURSUANT TO THE DOCTRINE OF *FORUM NON CONVENIENS***

INSTEP (BEIJING) SOFTWARE CO., LTD. ("Instep Beijing"), by its undersigned attorneys, hereby moves this Court for the entry of an order dismissing this action for lack of diversity jurisdiction, under the New York Convention and Federal Arbitration Act, and/or pursuant to the doctrine of *forum non conveniens*.

In support thereof, Instep Beijing hereby states:

### I. BACKGROUND

Plaintiff INSTEP SOFTWARE LLC ("Instep Software") filed this case on June 9, 2011. [Docket no. 1]. Instep Software alleges in its complaint that a "substantial part of the events giving rise to [its] claims" arose in the Northern District of Illinois. Complaint [Docket no. 1], ¶ 2. Instep Software alleges that it entered into a Software License Agreement with Instep Beijing, a "Chinese limited liability sino-foreign equity joint venture with its principal place of business at... Beijing" on or about May 4, 2007. Complaint [Docket no. 1], ¶¶ 4-5. Instep Software acknowledges that it stands on both sides of the transaction at issue, alleging as it does that "the

parties to the joint venture and their respective percentage ownership" include "Instep Software (33.3%)." Complaint [Docket no. 1], ¶ 4.

The Agreement allegedly involves "Licensed Property ...owned or held by Instep Software" including "eDNA service, interfaces and clients, subject to relevant United States and Chinese import/export laws and restrictions."Complaint [Docket no. 1], ¶ 5. The focus of the License Agreement is alleged to be "sales in the People's Republic of China." Complaint [Docket no. 1], ¶ 6. Instep Software alleges that "the dispute between the parties interferes with [its] development of other means to sell or license its software within the People's Republic of China." Complaint [Docket no. 1], ¶ 10. No specific facts are alleged in the Complaint to demonstrate any relationship between this case and the State of Illinois other than that "the plaintiff is a citizen of Illinois" and "§ 8.2(a) of the ...Agreement designates the federal courts located in Illinois for resolving disputes between the parties...." Complaint [Docket no. 1], ¶ 1-2.

The relief sought by Instep Software is solely declaratory in nature. Plaintiff asks that the court find "that the Software License Agreement has terminated" and, despite the fact that plaintiff is an admitted member of the Instep Beijing joint venture, "that Instep Beijing neither has any license to the Licensed Property nor any right to distribute, use, or further develop any of the Licensed Property." Complaint [Docket no. 1], pg. 3. The basis for Instep Software's claim for this relief is that "[t]he parties have failed to reach and renew any agreement as to royalties and pricing." Complaint [Docket no. 1], ¶ 7.

## II. DISCUSSION

**A.    This Case Should Be Dismissed For Lack of Diversity Jurisdiction.**

There is such a paucity of contacts in this case as between the defendant's transactions in

Beijing and the State of Illinois that, absent the choice-of-forum clause in the alleged Agreement, this Court would clearly not have personal jurisdiction over the defendant. As this Court concluded in *Ryobi Technologies, Inc. v. Broglen Hotel Corp.*, 2002 WL 731140, *3-4 (N.D.Ill. 2002) (Darrah, J.):

> "[P]ersonal jurisdiction has been held invalid even when the defendant has entered into licensing agreements with in-state parties.... [I]n simple terms, doing business with a company that does business in the forum state is not the same as doing business in the forum state. When a valid contract exists between the out-of-state defendant and a party in the forum state, the defendant must have substantial contact with the in-state party in order for personal jurisdiction to be valid."

As in *Ryobi,* "there are no allegations [in this case] that [Instep Beijing] has any offices, employees, agents or representatives in Illinois." *Id.* To the contrary, as confirmed by the affidavit submitted herewith (Ex. 1), Instep Beijing does no business whatsoever in the State of Illinois. Its offices, all 50-60 of its employees, its working facilities and records, its customers and its business dealings are all in China. *Id.*

There is a question of fact, moreover, with regard to the Licensing Agreement upon which plaintiff relies and thus a question of fact as to whether Instep Beijing should be deemed to have ever even consented to personal jurisdiction in this venue. *See* Ex. 1. *But see also Boyd v. Grand Trunk W.R. Co.*, 338 U.S. 263, 70 S.Ct. 26, 94 L.Ed. 55 (1949) (A contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought). Still, even if the Licensing Agreement's choice of forum clause is valid, and this Court thus has personal jurisdiction over Instep Beijing, this case should nevertheless be dismissed for lack of subject matter jurisdiction.

Instep Software, an Illinois limited liability company, is the plaintiff. The members of the

defendant joint venture also include Instep Software, however, placing that Illinois citizen on "both sides of the v" such that there is no diversity in this case. *See Swiger v. Allegheny Energy, Inc.*, 540 F.3d 179, 182-83 (3rd Cir. 2008), *citing Chapman v. Barney,* 129 U.S. 677, 682, 9 S.Ct. 426 (1889) ("[T]he Supreme Court has long applied the rule of [*Chapman*] that courts are to look to the citizenship of all the partners (or members of other unincorporated associations) to determine whether the federal district court has diversity jurisdiction.... [W]henever a... joint venture... or a similar association brings suit or is sued in a federal court, the actual citizenship of each of its members must be considered...."). *See also Meridian Homes Corp. v. Nicjolas W. Prassas & Co.*, 687 F.2d 228, 231 (7th Cir. 1982) ("Under Illinois law, which governs this diversity case, the rights and liabilities of members of a joint venture are generally determined by the same legal principles as govern partnership agreements.").

Plaintiff may claim that, because the defendant is itself a Chinese joint venture, this Court has diversity jurisdiction under 28 U.S.C. §1332(a)(2). Complaint [Docket no. 1], ¶1. But it is the "citizenship of all... partners... and not the 'citizenship' of the partnership itself – [which must] be taken into account in determining diversity...." *Enron Oil Trading & Transp. Co. V. Calumet Lubricants Co., L.P.*, 1991 WL 222169 (N.D. Ill. 1991) (Shadur, J.).

There is no diversity jurisdiction in this case, therefore, and this case should be dismissed pursuant to Rule 12(b)(1). *See also AMCO Ins. Co. v. Erie Ins. Exchange*, 2011 WL 5833977 (N.D.Ill. 2011) (Darrah, J.) (Concluding in a similar case involving the question of whether personal jurisdiction is established when partners are in the same state as their opponents, that "Almost every court that has decided this issue has concurred in this finding").


**B.      This Case Should be Dismissed Pursuant to the New York Convention and the Federal Arbitration Act.**

This Court should decline this case, and find that this dispute should be decided pursuant to the arbitration rules in Beijing, China because the Joint Venture referred to in the Complaint is, as plaintiff alleges, a "Chinese limited liability sino-foreign equity joint venture" (Complaint [Docket no. 1], ¶4). As such, it is subject to Chinese law and should be decided pursuant to the arbitration clause provided for in the Joint Venture Agreement under that law:[1]

> "Any dispute arising out of or in connection with this contract shall be resolved through friendly consultation between the parties. If the dispute cannot be resolved, the dispute shall be submitted to the China International Economic and Trade Arbitration Committee to be arbitrated in accordance with its arbitration procedures and rules. The arbitration award shall be final and binding upon the parties." *See* Ex. B, Chapter 19, Article 80.

> "During the period when a dispute is being resolved, the Parties shall continue to perform this contract other than the issue in dispute." *See* Ex. B, Chapter 19, Article 81.

"Arbitration is a favored child of the law." *Lyndon Property Ins. Co. v. Founders Ins. Co., Ltd.*, 587 F.Supp.2d 333 (D.Mass. 2008). Thus, under the Federal Arbitration Act, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id.*, citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). Under the Arbitration Act and the New York Convention, in fact, a district court should compel arbitration in circumstances such as these. *See* 9 U.S.C.A. § 203 ("A court should compel arbitration of a dispute arising under the Convention on Recognition

---

[1] Chinese law requires arbitration in this context. *See* Adopted at the second session of the Fifth National People's Congress on July 1, 1979, and Amended in accordance with "The Decision on Amendment to The Law of the People's Republic of China on Chinese-Foreign Equity Joint Ventures" adopted at the Third Session of the Seventh National People's Congress on April 4, 1990, Article 14: "Disputes arising between the parties to an equity joint venture which the board of directors fails to settle through consultation may be settled through conciliation or arbitration by an arbitral body of China or through arbitration by an arbitral body agreed upon by the parties.").

and Enforcement of Foreign Arbitral Awards when (1) there is an agreement in writing to arbitrate the dispute, (2) the agreement provides for arbitration in the territory of a signatory to the Convention, (3) the agreement to arbitrate arises out of a commercial legal relationship, and (4) there is a party to the agreement who is not an American citizen.").

In this case, the joint venture agreement provides for arbitration in China, a signatory to the Convention, and involves a commercial relationship between a U.S. company and a Chinese entity. *See Borsack v. Chalk & Vermilion Fine Arts, Ltd.*, 974 F.Supp. 293, 301-02 (S.D.N.Y. 1997) ("[A]rbitration must not be denied unless a court is positive that the clause it is examining does not cover the asserted dispute."); *Pan Quan Ru v. Sepat Shipping PTE Ltd.*, 2010 WL 582380 (E.D.La. 2010) ("The Plaintiff contends that the arbitration agreement is null and void under Chinese law and conflicts with the collective bargaining agreement. However, these claims require an analysis and interpretation of Chinese law beyond this Court's limited inquiry. Resolution of these issues would require the Court to reach the merits of the underlying dispute, which is more appropriate for the arbitrator."). Arbitration should thus be compelled in this case "[b]ecause the Agreement provides for arbitration in... China, a signatory to the convention, and because the subject matter is clearly commercial, and not domestic in scope." *Ocean Benignity Ltd. v. Ocean Maritime Co., Ltd.*, 606 F.Supp.2d 519 (S.D.N.Y. 2009).

The licensing agreement, allegedly entered into between the joint venture and one of its own members, does not compel a contrary result. To the contrary, while there may be conflicts between these documents, depending upon their interpretation, it may be that those conflicts may be readily reconciled given the fiduciary duties owed by the parties to each other under the joint

venture and under the law as it should be applied by the Arbitrator in Beijing.[2]

It also bears noting that the question raised by the complaint in this case is not whether Instep Beijing breached its obligation to negotiate in a friendly manner (as required by the joint venture agreement) but rather whether the parties' failure to reach agreement somehow triggers relief under the license agreement. Since the latter analysis should not even come into play until the former is completed, it follows that this case - the one filed in this court - should not proceed until all of the issues under the governing joint venture agreement have been resolved. *See, e.g. Malaysia Intern. Shipping Corp. v. Sinochem Intern. Co. Ltd.*, 2004 WL 825466 at *4 (E.D.Pa.2004). ("The choice of law provision in the bill of lading is not controlling. In our original opinion, we stated, and Plaintiff does not dispute, that 'Plaintiff does not allege a violation with respect to the nature of the carrier's duties to be carried out pursuant to the bill of lading and carriage contract, such as the manner of loading, conditions in transit, or protection of the cargo.'...Consequently, the provisions of the bill of lading do not come into play.")

The parties relationship – their fiduciary duties to one another – are found in, arise under and should be defined by reference to the joint venture agreement. That agreement is thus

---

[2] *See also Dandong Shuguang Axel Corp., Ltd. v. Brilliance Machinery Co.*, 2001 WL 637446 (N.D.Cal. 2001) ("If the subsequent agreement to purchase the equipment from Brilliance and not from the international market was intended to be a new financial arrangement that was outside of the JVA's arbitration scope, the Court would have expected the parties to expressly state so in the purchase contract, rather than merely choosing to execute the contract in California and omit an arbitration provision. Furthermore, Brilliance offers no specific facts supporting its contention that the parties mutually intended the June agreements to be independent contracts."); *Magnuson v. Schaider,* 183 Ill.App.3d 344, 357, 538 N.E.2d 1309, 1318 (2nd Dist.,1989) ("The general rule is that in the absence of evidence of a contrary intention, where two or more instruments are executed by the same contracting parties in the course of the same transaction, the instruments will be considered together and construed with reference to one another because they are, in the eyes of the law, one contract."); *Dragon Capital Partners L.P. v. Merrill Lynch Capital Services Inc.*, 949 F.Supp. 1123, 1129 (S.D.N.Y.1997.) ("Even if the forum selection clause were still valid, it could be superseded by a strong argument in favor of deference to a foreign action.... ").

necessary to any analysis with regard to whether there has been any breach or triggering event that should be deemed to cause the agreements to terminate. It is governed by Chinese law and calls for disputes regarding its scope to be determined by a Chinese arbitrator.

This Court should thus resolve any question in favor of arbitration and dismiss this case in favor of a resolution in Beijing pursuant to the governing joint venture agreement. *See also Ellis v. Coventry Capital I LLC,* 2008 WL 4396349 (N.D. Ill. 2008) (Darrah, J.) ("Once it is clear the parties have a contract that provides for arbitration of some issue between them, any doubts concerning the scope of the arbitration clause are resolved in favor of arbitration.").

**C.     This Case Should be Dismissed Pursuant to the Doctrine of *Forum non Conveniens*.**

As plaintiff admits in the Complaint, the Licensed Property is itself subject to "Chinese import/export laws and restrictions" and the focus of the business is "sales in the People's Republic of China." Complaint [Docket no. 1], ¶ 5-6, 10. Plaintiff itself is an admitted member of the Instep Beijing Joint Venture which is a Chinese limited liability sino-foreign joint venture with its principal place of business in Beijing. Complaint [Docket no. 1], ¶ 4. China thus has significant ties to this litigation. Indeed, its ties are so clear that they have been recognized by the plaintiff which - in addition to this action - is seeking relief by way of a separate action in China. *See* Affidavit, Exs. C-D (Complaint filed by plaintiff against defendant in China).

There are thus two actions now pending as between these parties, both initiated by the plaintiff but on separate continents. If both proceed, that could easily lead to two separate, conflicting results arising from the same common nucleus of operative facts. This court should thus find that plaintiff is attempting to split its cause of action, using separate theories of recovery in different forums to essentially shop for the best result. Such practice should not be

8

countenanced and this court should thus dismiss this case in favor of arbitration in China, the more convenient forum for all concerned.[3] Indeed, the doctrine of *forum non conveniens* supports just such a result.

In *Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 549 U.S. 422, 127 S.Ct. 1184, (2007), the United States Supreme Court found that:

> "If... a court can readily determine that it lacks jurisdiction over the cause or the defendant, the proper course would be to dismiss on that ground. In the mine run of cases, jurisdiction will involve no arduous inquiry and both judicial economy and the consideration ordinarily accorded the plaintiff's choice of forum should impel the federal court to dispose of those issues first.... But where subject-matter or personal jurisdiction is difficult to determine, and *forum non conveniens* considerations weigh heavily in favor of dismissal, the court properly takes the less burdensome course."

"At the outset of any *forum non conveniens* inquiry, the court must determine whether there exists an alternative forum." *Piper Aircraft Co.*, 454 U.S. 235, 254 n. 22, 102 S.Ct. 252 (1981). So long as the alternative forum offers a remedy and process for resolving the dispute, it should be deemed adequate. *Compania Naviera Joanna, SA v. Koninklijke Boskalis Westminster*

---

[3] *See also Alvear-Velez v. Mukasey*, 540 F.3d 672, 677 (7th Cir.2008) ("[A] cause of action consists of a core of operative facts which give rise to a remedy. Relatedly, *res judicata* also prevents a party from splitting a single cause of action or using several theories of recovery as the basis for separate suits."); *Nilssen v. Motorola, Inc.*, 255 F.3d 410, 414 (7th Cir.2001) ("By splitting the patent and trade-secret theories into two suits, the district court also directed the eventual appeals to two different courts... Squandering judicial resources by requiring six appellate judges (at least two panels of two circuits) to master this material should be avoided."); *Mak v. Wocom Commodities, Ltd.*, 112 F.3d 287, 291 (7th Cir. 1997) ("Further, Hong Kong would have been a more convenient forum for all parties. Mak relied on Hong Kong jurisdiction in a prior case and could have in this one. We cannot make our judicial system available to those who seek to involve our courts in their foreign problems as they shop here for what they perceive to be a more advantageous forum."); *Malaysia Intern. Shipping Corp. v. Sinochem Intern. Co. Ltd.*, 2004 WL 825466 at *4 (E.D.Pa.2004). ("The overwhelming significance of ensuring the convenience of all parties, by requiring that they participate in litigation of a specific matter in only one forum, tips the scale heavily toward a finding that, despite the deference we pay to Plaintiff's preferred forum, China presents the most convenient and appropriate forum to hear this matter. To find otherwise would establish oppressiveness and vexation not only to Defendant, but to all parties involved.").

*NV*, 569 F.3d 189, 204 (4th Cir.2009). Thus, in this case, the Court should find that the Chinese arbitration system provides the parties with an adequate forum. *See Tang v. Synutra Intern., Inc.*, 2010 WL 1375373 (D.Md. 2010) ("[T]he Supreme Court and Fourth Circuit have both recently found China to be an adequate forum in the context of *forum non conveniens* dismissals...."); *Pyrenee, Ltd. v. Wocom Commodities, Ltd.*, 984 F.Supp. 1148, 1162 (N.D.Ill. 1997). ("The Supreme Court has held that a forum where the defendant is amenable to process is adequate unless the remedy it provides is so clearly inadequate or unsatisfactory that it is no remedy at all, an exception present only in rare circumstances. Pyrenee therefore faces an uphill battle in light of the fact that several courts have expressly found Hong Kong an adequate forum for fraud and other claims, even in the wake of reversion.")

Plaintiff should not be heard to claim to the contrary as it has chosen to proceed in precisely that same forum. *See Dragon Capital Partners L.P. v. Merrill Lynch Capital Services Inc.*, 949 F.Supp. 1123, 1128 (S.D.N.Y.1997.) ("Plaintiff chose to file its... complaint in Hong Kong. The law is clear that when a Plaintiff invokes the laws of a particular jurisdiction, it cannot then repudiate the courts of that jurisdiction as unable to afford justice to its claims."); *Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 549 U.S. 422, 435, 127 S.Ct. 1184, 1193 (2007). ("Malaysia International faces no genuine risk that the more convenient forum will not take up the case. Proceedings to resolve the parties' dispute are underway in China, with Sinochem as the plaintiff.").

The relevant public interest factors also support the conclusion that this case should be dismissed in favor of arbitration in China. "The 'public interest' factors include: (i) the administrative difficulties flowing from court congestion; (ii) the local interest in having

localized controversies resolved at home; (iii) the interest in having a the trial of a diversity case in a forum that is familiar with the law that must govern the action; (iv) the avoidance of unnecessary problems in conflicts of law, or in application of foreign law; and (v) the unfairness of burdening citizens in an unrelated forum with jury duty." *DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 794 (5th Cir. 2007). *See also S. Megga Telecommunications Ltd. v. Lucent Technologies, Inc.*, 1997 WL 86413 at *11 (D.Del.1997) ("With respect to the public interest factors, the court finds, as the *Mars* court recognized, that general concerns respecting international comity counsel against exercising jurisdiction over matters involving Chinese intellectual property law. Consequently, the court shall grant plaintiffs' motion to dismiss counts I through IV of Lucent's counterclaims on *forum non conveniens* grounds.").

Thus, as in *Dragon Capital Partners L.P. v. Merrill Lynch Capital Services Inc.*, 949 F.Supp. 1123, 1131-32 (S.D.N.Y.1997), the Court should find that China's interest in this litigation outweighs that of the United States:

> "Considering the applicable public interests here, it is clear that this dispute should be litigated in Hong Kong. Hong Kong was the sight of most of the meetings about the transactions in question and the disputed options were intended to track the Japanese Stock Exchange in one instance and simulate warrants listed on the Hong Kong Stock exchange in the other. Compared to Hong Kong, this Court is at a greater distance from the site of the action. Furthermore, Hong Kong has an local interest in having this localized controversy decided at home."

"The private interest factors include: (i) the relative ease of access to sources of proof; (ii) availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; (iii) possibility of view of [the] premises, if view would be appropriate to the action; (iv) all other practical problems that make trial of a case easy, expeditious and inexpensive enforceability of judgment; and whether the plaintiff has sought to

'vex,' 'harass,' or 'oppress' the defendant." *DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 794 (5th Cir. 2007). In this case, the private interest factors thus also demonstrate that China is the more convenient forum. *See* Ex. 1 (the witnesses, customers and virtually all of the most relevant evidence in this case is all in China).

As the Court concluded in *Tang v. Synutra Intern., Inc.*, 2010 WL 1375373 (D.Md. 2010):

> "The private interest factors clearly support the conclusion that China is the more appropriate forum. Because the events giving rise to this action occurred primarily, if not exclusively, in China, it is reasonable to assume that there will be more Chinese witnesses than United States witnesses, and that the relevant evidence is much more likely to be found in China.... Moreover, the Chinese forum would have the power to compel the testimony of unwilling witnesses and the cost of producing willing witnesses would be significantly reduced there. The present forum, by contrast, could not compel the testimony of Chinese witnesses and would pose substantial expense and inconvenience. Many of the witnesses would speak only Chinese and much of the documentary evidence would be written in that language, thereby necessitating translation of not only all the documentary evidence but also the testimony of most witnesses from Chinese to English if the suit were to proceed here."

There is no reason to question the effectiveness of the dispute resolution system in China, as many courts have concluded. *See, e.g. Pyrenee, Ltd. v. Wocom Commodities, Ltd.*, 984 F.Supp. 1148, 1165 (N.D.Ill. 1997) ("Hong Kong has the ability to secure extraterritorial evidence through Letters of Request and Letters Rogatory."); *Jiali Tang v. Synutra Intern., Inc.*, 656 F.3d 242, 252 (4th Cir. 2011) ("[T]he district court anticipated that most of the evidence and witnesses are in China. The court rightly observed that it lacks authority to compel the attendance of Chinese witnesses, greatly undermining a fact-finding effort in Maryland.... Moreover, because much of the evidence will derive from Chinese witnesses, trial in an American court will require costly translators. In sum, the district court was well within its discretion in concluding

that the private interest factors favor dismissal."); *Malaysia Intern. Shipping Corp. v. Sinochem Intern. Co. Ltd.*, 2004 WL 825466 at *3 (E.D.Pa.2004). ("China does allow witnesses in distant locations to testify through audio or video technology, as well as admits evidence obtained pursuant to our discovery process.").

On the other hand, as the Court concluded in *Pyrenee, Ltd. v. Wocom Commodities, Ltd.*, 984 F.Supp. 1148, 1165 (N.D.Ill. 1997):

> "The difficulty and expense associated with compelling these employees to testify in the United States would prove prohibitively difficult. All of Wocom's Hong Kong employees are likely beyond our powers of compulsory process, while a Hong Kong court will have far less difficulty in securing the appearance of its own citizens. Even if these witnesses could be forced to make the journey, a flight from Hong Kong to the United States takes a daunting 18 hours and is extremely expensive."

"As a matter of fairness, it would be excessively burdensome to require a [Chinese] defendant to bring [Chinese] witnesses and exhibits around the world to [the United States] to defend itself in a dispute over what is essentially a [Chinese] transaction." *Transamerica ICS, Inc. v. Tugu Ins. Co.*, 588 F.Supp. 1301, 1304 (S.D.N.Y.1984). This Court should therefore dismiss this case pursuant to the doctrine of *forum non conveniens*.

### III. CONCLUSION

WHEREFORE, INSTEP (BEIJING) SOFTWARE CO., LTD. ("Instep Beijing"), by its undersigned attorneys, hereby moves this Court for the entry of an order dismissing this action for lack of diversity jurisdiction, under the New York Convention and Federal Arbitration Act, and/or pursuant to the doctrine of *forum non conveniens*, together with such additional relief as the Court deems just and proper or to which Instep Beijing is otherwise entitled as a matter of law.

Dated: November 28, 2011

                        Respectfully submitted,

                        INSTEP (BEIJING) SOFTWARE CO., LTD

                        By:_____
                                One of its Attorneys

Ted A. Donner
DONNER & COMPANY LAW OFFICES LLC
1125 Wheaton Oaks Court
Wheaton, Illinois 60187
(630) 588-1131