UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| INSTEP SOFTWARE, LLC, | ) |
| Plaintiff, | ) ) ) ) |
| v. | ) Case No. 1:11-cv-03947 ) ) Judge John W. Darrah |
| INSTEP (BEIJING) SOFTWARE CO., LTD., | ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

InStep Software, LLC ("InStep Software"), filed a Complaint for Declaratory Judgment against Instep (Beijing) Software Co., Ltd. ("Instep Beijing"), seeking a determination that the Software License Agreement between the two parties has terminated and that Instep Beijing does not have a valid license to the licensed property nor any right to distribute, use, or further develop any of the licensed property. Before the Court is Instep Beijing's Motion to Dismiss for lack of subject-matter jurisdiction, pursuant to the Federal Arbitration Act and/or the doctrine of *forum non conveniens*.

### BACKGROUND[1]

Plaintiff InStep Software develops and licenses engineering software for utilities, manufacturing, telecommunications, process industries, and governmental entities. (Compl. ¶ 3.) Defendant Instep Beijing is a Chinese limited liability sino-foreign equity joint venture with its

---

[1] The following facts are drawn from InStep Software's Complaint and are accepted as true for purposes of the Motion to Dismiss. *See Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010).

1

principal place of business in Beijing, People's Republic of China. (*Id.* ¶ 4.) In its Complaint, InStep Software alleges the parties entered into a Software License Agreement, effective May 4, 2007. (Id. ¶ 5.) The parties failed to reach and renew any agreement on royalties and pricing, as required by the License Agreement to be negotiated annually; Instep Software now seeks a determination that the rights and license to Instep Beijing have terminated. (*Id.* ¶¶ 7-8.) According to InStep Software, Instep Beijing denies that the Software License Agreement, and its rights and license under it, have terminated. (*Id.* ¶ 9.)

In its Motion to Dismiss, Instep Beijing argues this Court does not possess subject-matter jurisdiction because the parties lack complete diversity, as required by 28 U.S.C. § 1332(c)(1). Alternatively, Instep Beijing argues InStep Software's Complaint should be dismissed pursuant to the Federal Arbitration Act or the doctrine of *forum non conveniens*.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) allows a party to raise as a defense, by motion, a federal court's lack of subject-matter jurisdiction. "When reviewing a dismissal for lack of subject-matter jurisdiction . . . the district court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff." *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007) (*St. John's*). However, when a defendant makes this challenge, the plaintiff bears the burden of establishing jurisdiction. *See Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 447-48 (7th Cir. 2005). If necessary, the court may also look beyond the jurisdictional allegations to evidence outside of the pleadings to determine whether federal subject-matter jurisdiction exists. *St. John's*, 502 F.3d at 616.

## ANALYSIS

*Lack of Subject-Matter Jurisdiction*

For diversity jurisdiction to exist, 28 U.S.C. § 1332 requires complete diversity between parties and an amount in controversy exceeding $75,000.00, exclusive of interest and costs. *See Del Vecchio v. Conseco, Inc.*, 230 F.3d 974, 977 (7th Cir. 2000). Complete diversity means "none of the parties on either side of the litigation may be a citizen of the state of which party on the other side is a citizen." *Howell v. Tribune Entm't Co.*, 106 F.3d 215, 217 (7th Cir. 1997) (citations omitted).

Under 28 U.S.C. §1332(c)(1), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." "Unincorporated business entities, however, are treated as citizens of every jurisdiction in which any equity investor or member is a citizen." *Indiana Gas Co., Inc. v. Home Ins. Co.*, 141 F.3d 314, 316 (7th Cir. 1998) (*Indiana Gas*).

InStep Software's Complaint states Instep Beijing is a "Chinese limited liability sino-foreign equity joint venture." (Compl. ¶ 4.) Instep Beijing argues that for purposes of determining whether complete diversity exists, the focus should be the citizenship of all partners in the joint venture. InStep Software possesses a 33.3-percent ownership interest in Instep Beijing. (*Id.*) Therefore, Instep Beijing contends this places InStep Software "on both sides of the v.," destroying diversity and eliminating subject-matter jurisdiction. If the citizenship of Instep Beijing, a Chinese entity organized under Chinese law, controls the determination of citizenship rather than its partners, then complete diversity exists and jurisdiction is proper.

3

In *People of Puerto Rico v. Russell & Co., Sucesores S. En. C.* (*Russell*), the Supreme Court handled the question of how to determine the citizenship of a *sociedad en comandita* ("limited partnership"), an entity created under the civil law of Puerto Rico. 288 U.S. 476, 480 (1933). The Court recognized "the tradition of the common law is to treat as legal persons only incorporated groups." The Court also acknowledged, however, that in the civil law of the *sociedad's* creation, the *sociedad* is "consistently regarded as a juridical person." *Id.* at 481. Based on this finding, the Court concluded it saw "no adequate reason for holding that the *sociedad* has a different status for purposes of federal jurisdiction than a corporation organized under that law." *Id.* at 482. As a result, the Court looked to the citizenship of the *sociedad*, rather than its members, for determining whether diversity jurisdiction existed.

The Seventh Circuit, in determining whether diversity jurisdiction existed between an entity created under the laws of the Republic of Cyprus (a church), and an Indiana corporation, held "[t]he primary issue . . . is whether the record contains sufficient evidence that, under the laws of the Republic of Cyprus, the Church is considered a juridical entity distinct from its members, regardless of corporate status." *Autocephalous Greek-Orthodox Church of Cyprus v. Goldberg & Feldman Fine Arts, Inc.*, 917 F.2d 278, 285 (7th Cir. 1990). The Court stressed that "the citizenship status generally attributed to religious organizations under American law, as well as the characteristics of and requirements for the corporate form under American law, are irrelevant." *Id.* at 285. Therefore, because the Church was recognized as a distinct juridical entity under Cyprian law, it was a "citizen or subject" of that state, and complete diversity existed. *Id.*

InStep Software argues that the citizenship of Instep Beijing, rather than its members, is the relevant inquiry for determining diversity jurisdiction in this case because Instep Beijing is a

juridical person under Chinese law. To support this contention, InStep Software submitted the affidavit of Xu Jing, a member of the Bar of the People's Republic of China. (Pl. Resp., Ex. 1.) His affidavit states that Article 3 of the Company Law of the People's Republic of China ("Company Law") provides: "a company is an enterprise juridical person, which has independent juridical person property and enjoys the property right of the juridical person." *Id.*; *see also* Company Law of the People's Republic of China (Revised for the third time at the 18th Session of the 10th National People's Congress of the People's Republic of China on October 27, 2005), art. 3, *available at* http://www.chinadaily.com.cn/bizchina/2006-04/17/content_569258.htm. Article 2 of the Company Law provides that "the term 'company' as mentioned in this Law refers to a limited liability company established within the territory of the People's Republic of China." *Id.*, at art. 2. Finally, Article 4 of the "Law of the People's Republic of China on Chinese-foreign Equity Joint Ventures" states that "an equity joint venture shall take the form of a limited liability company." Law of the People's Republic of China on Chinese-Foreign Equity Joint Ventures (Adopted at the Second Session of the Fifth National People's Congress on July 1, 1979, and amended in accordance with "The decision on Amendment to The Law of the People's Republic of China on Chinese-Foreign Equity Joint Ventures," (adopted at the Third Session of the Seventh National People's Congress on April 4, 1990)), art. 4, *available at* http://www.china.org.cn/english/features/investment/36749.htm. Instep Beijing, therefore, constitutes a juridical person under the Chinese law which established it.

Instep Beijing argues *Russell* should not be followed based on the Supreme Court's subsequent holdings in *United Steelworkers of Am., AFL-CIO v. R.H. Bouligny, Inc.*, 382 U.S. 145 (1965) (*Bouligny*) and *Carden v. Arkoma Associates*, 494 U.S. 185 (1990) (*Carden*). This

argument is unpersuasive because the Court specifically distinguished *Russell* from these cases in a manner contrary to Instep Beijing's position.

In *Bouligny*, the issue was whether an unincorporated labor union located in the United States was to be treated as a citizen for purposes of federal diversity jurisdiction. *Bouligny*, 382 U.S. at 147. The Court explained that in *Russell*, it was confronted with an entity created by civil law that regarded it as a juridical person, while *Bouligny* involved an unincorporated labor union created in the United States. *Id.* at 151-52. Thus, the Court only reiterated the limited holding of *Russell* while reaffirming the traditional common-law rule that unincorporated business entities possess the citizenship of its members.

Similarly, in *Carden*, the Court was confronted with a defendant challenging diversity jurisdiction on the basis that the plaintiff, a limited partnership organized under the laws of Arizona, was not completely diverse due to the citizenship of one of its partners. *Carden*, 494 U.S. at 186-87. The Court recognized the narrow exception created by *Russell* and again distinguished it from *Carden* on the same grounds as it did in *Bouligny*. *Id.* at 189-90. As a result, the Court refused to look to the citizenship of the Arizona unincorporated entity instead of its members.

As the Seventh Circuit has explained, "*Carden* articulated a general rule: every association of a common-law jurisdiction other than a corporation is to be treated like a partnership." *Indiana Gas*, 141 F.3d at 317-18. The reference to common-law jurisdiction in *Carden*, the Court noted, acknowledges the holding in *Russell* that dealt with "the distinctive problem of fitting an exotic creation of the civil law . . . into a federal scheme which knew it not." *Id.* (citations omitted); *see generally Lear Corp. v. Johnson Elec. Holdings Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003) (holding that a business organization "limited by shares" under

6

Bermuda law is considered a corporation for purposes of determining citizenship in a diversity jurisdiction challenge); *Superl Sequoia Ltd. v. Carlson Co., Inc.*, 615 F.3d 831, 832 (7th Cir. 2010) (same conclusion as to Hong Kong organization).

Instep Beijing is a foreign entity created under Chinese civil law, is regarded as a juridical person under that law, has independent juridical person property under that law, and enjoys the property right of a juridical person. The citizenship of its partners is, therefore, irrelevant in determining whether complete diversity exists. Instep Beijing is considered a Chinese citizen for diversity purposes; thus, subject-matter jurisdiction exists under 28 U.S.C. § 1332 because complete diversity is present between the parties.

### *Arbitration*

Instep Beijing further argues the Complaint should be dismissed based on an arbitration clause found in the Joint Venture Agreement, which states, in relevant part, "any dispute arising out of or in connection with this contract . . . shall be submitted to the China International Economic and Trade Arbitration Committee to be arbitrated in accordance with its arbitration procedures and rules." (Def. Mot., Ex. B.) InStep Software counters that the forum-selection clause found in the parties' Software License Agreement controls this dispute. Section 8.2(a) of the Software License Agreement states:

> This Agreement and the respective rights and obligations of the parties shall be governed by and construed in accordance with the internal and substantive laws of the State of Illinois (without regard to principles of conflicts of laws). Each of the parties agrees that any suit relating to this Agreement shall be brought in the federal or state courts located in the State of Illinois, and each of the parties hereto agrees to submit to the jurisdiction of such courts. Each party hereby waives any objection that it may now or hereafter have to venue of any such suit or any such court or that such suit is brought in an inconvenient court or that jurisdiction is improper.

7

(Compl. Ex. 1, ¶ 8.2(a).) Instep Beijing does not dispute it was a party to the Software License Agreement. Instep Beijing also does not challenge the enforceability of the forum-selection clause on the grounds that it is invalid for such reasons as fraud. *See Muzumdar v. Wellness Int'l Network, Ltd.*, 438 F.3d 759, 762 (7th Cir. 2006) (holding "a forum selection clause will be enforced unless it can be clearly shown 'that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" (quoting *The Breman v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972))).

When subject-matter jurisdiction is present, parties to a contract can agree in advance to the jurisdiction of a given court. *Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311 (1964). In determining the scope of a forum-selection clause, the Seventh Circuit provides: "all disputes the resolution of which arguably depend on the construction of an agreement arise out of that agreement for purposes" of a forum-selection clause. *Omron Healthcare Inc. v. Maclaren Exports Limited*, 28 F.3d 600, 603 (7th Cir. 1994).

InStep Software alleges in its Complaint that Instep Beijing's rights and license under the Software License Agreement have terminated. (Compl. ¶ 8.) InStep Software further alleges Instep Beijing denies that its rights and license under the Agreement have terminated and that Instep Beijing is being unjustly enriched by its improper continued use of the Licensed Property. (*Id.* ¶¶ 9-10.) Moreover, InStep Software's entire Complaint is based on the interpretation of the parties' rights and license under the Software License Agreement. Therefore, this dispute arises out of the Software License Agreement for purposes of the forum-selection clause.

The clause Instep Beijing relies on to support its arbitration argument is contained in the Joint Venture Contract and states that it applies to disputes arising out of or in connection with that contract. However, this dispute is not alleged to have risen out of the Joint Venture

Contract. Rather, InStep Software's Complaint states a claim for relief based on rights of the parties under the Software License Agreement. As a result, the forum-selection clause that is specifically included in, and pertains to, the Software License Agreement controls over the arbitration clause presented by Instep Beijing in the Joint Venture Contract. *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993) (holding that a forum-selection clause was valid and applicable because all of plaintiffs' claims arose from the contractual relationship). It is therefore unnecessary to address InStep Software's position that the Joint Venture Contract presented by Instep Beijing is invalid.

### *The Application of Forum Non Conveniens*

Lastly, Instep Beijing seeks dismissal of the case pursuant to the doctrine of *forum non conveniens*. On several occasions, however, the Seventh Circuit has recognized that the signing of a valid forum-selection clause is a waiver of the right to move for a change of venue on the ground of inconvenience to the moving party. *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1293 (7th Cir. 1989); *Nw. Nat. Ins. Co. v. Donovan*, 916 F.2d 372, 378 (7th Cir. 1990) ("one who has agreed to be sued in the forum selected by the plaintiff has thereby agreed not to seek to retract his agreement by asking for a change of venue on the basis of costs or inconvenience to himself; such an effort would violate the duty of good faith that modern law reads into contractual undertakings"); *see also Walter E. Heller & Co. v. James Godbe Co.*, 601 F.Supp. 319, 321 (N.D. Ill. 1984) (implicit in consenting to a forum-selection clause is consent to venue as well as personal jurisdiction).

Instep Beijing explains there is a separate action between the parties pending in China. (Def. Mot., Ex. D.) The Bill of Complaint on Civil Affairs submitted by Instep Beijing indicates the case involves a "dispute on software copyright possession, tort dispute." (Def. Mot., Ex. D p.

1.) This appears to be a separate and distinct issue from the case at bar, which involves the termination of the Software License Agreement. Instep Beijing fails to explain how these two separate actions could produce conflicting results. The doctrine of *forum non conveniens* is inapplicable.

## CONCLUSION

For the reasons set forth above, Instep Beijing's Motion to Dismiss is denied on all grounds.

Date: 3-29-12

JOHN W. DARRAH
United States District Court Judge