UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| INSTEP SOFTWARE, LLC, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 11-CV-3947 |
| INSTEP (BEIJING) SOFTWARE CO., LTD., | ) ) ) Judge John W. Darrah |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff InStep Software, LLC filed suit against Defendant Instep (Beijing) Software Co., Ltd. on June 9, 2011. The Complaint seeks a declaratory judgment that a Software License Agreement between the parties has terminated. Defendant moved to dismiss the Complaint, but this motion was denied, as was Defendant's motion for reconsideration of the dismissal. Thereafter, Defendant filed an answer, again denying the existence of diversity jurisdiction and denying the parties entered into a Software License Agreement. Defendant did not assert any affirmative defenses. Now, Plaintiff moves for summary judgment, seeking entry of a declaratory judgment that the Software License Agreement, and the included grant of license and rights to the Licensed Property to Defendant under it, terminated May 13, 2011. Defendant opposes this motion.

## BACKGROUND

Local Rule 56.1(a)(3) requires a party moving for summary judgment to provide "a statement of material facts as to which the moving party contends there is no genuine issue." Rule 56.1(b)(3) then requires the nonmoving party to admit or deny each factual

statement proffered by the moving party and to concisely designate any material facts that establish a genuine dispute for trial. *See Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005). A litigant's failure to dispute the facts set forth in an opponent's statement in the manner dictated by Local Rule 56.1 results in those facts' being deemed admitted for purposes of summary judgment. *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

Local Rule 56.1(b)(3)(C) permits additional material facts to be provided by the nonmoving party. Local Rule 56.1(a)(3) then allows the moving party to submit a concise reply to these additional facts. Rule 56.1 requires statements of facts to consist of short, numbered paragraphs. To the extent that a response to a statement of material fact provides only extraneous or argumentative information, this response will not constitute a proper denial of the fact, and the fact will be admitted. *See Graziana v. Village of Oak Park*, 401 F. Supp. 2d 918, 937 (N.D. Ill. 2005). Similarly, to the extent that a statement of fact contains a legal conclusion or otherwise unsupported statement, including a fact which relies upon inadmissible hearsay, such a fact is disregarded. *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997). Many of the purported facts submitted by Defendant were disregarded, as they were argumentative, sought to introduce a legal conclusion, or otherwise unsupported by the record.

The following is taken from the parties' statements of undisputed material facts submitted in accordance with Local Rule 56.1. Plaintiff is an Illinois limited liability company with its principal place of business located in Chicago, Illinois. (Pl.'s SOF ¶ 1.) Plaintiff develops and licenses engineering software for government entities and other

industries. (*Id.*)  Defendant is a Chinese limited liability Sino-foreign equity joint venture with its principal place of business in Beijing, People's Republic of China. (*Id.* ¶ 2.) Plaintiff, along with Li Wenjuan and Li Xiaomin, is a party to the joint-venture Defendant. (*Id.*)  Plaintiff's claim arises under 28 U.S.C. § 2201(a), to determine the rights of the parties under the License Agreement. (*Id.* ¶ 3.)  Jurisdiction is premised upon diversity, pursuant to 28 U.S.C. § 1332(a)(2), and venue is proper under 28 U.S.C. § 1391(a)(2).[1] (*Id.* ¶ 4.)

In China in 2002, Li Xiaomin and Li Wenjuan owned and operated a company called "Beijing Kuyin Technology Co., Ltd." ("Kuyin"), which sold the software of one of Plaintiff's competitors. (*Id.* ¶ 5.)  However, on November 27, 2002, an agreement was entered into between Kuyin and Plaintiff, entitled the "Beijing Kuyin Technology Co., Ltd. and InStep Software LLC Co-Operation Agreement." (*Id.* ¶ 7.)  In or around January 2005, Li Xiaomin and Li Wenjuan formed the Defendant joint venture, as well as "Instep Asia Limited," a Hong Kong company, which became a 33.3% shareholder of Defendant. (*Id.* ¶ 8.)  Instep Asia Limited, Li Xiaomin, and Li Wenjuan entered into the "Contract for Sino-Foreign Equity Joint Venture." (*Id.*)

On February 23, 2005, the parties entered into the "Instep (Beijing) Software Co., Ltd. and InStep Software LLC Co-Operation Agreement." (*Id.* ¶ 9.)  On February 27, 2006, the parties entered into a new Co-Operation Agreement. (*Id.*)  Under the Co-Operation Agreements, Kuyin and Defendant promoted the sale of Plaintiff's eDNA software suite in China. (*Id.* ¶ 10.)  On May 4, 2007, Instep Asia transferred its one-third

---

[1] As mentioned above, Defendant denies jurisdiction exists, as it argued in its Motion to Dismiss and Motion for Reconsideration, which were both previously denied.

3

equity stake in Defendant to Plaintiff, pursuant to an "Equity Transfer Agreement."  (Pl.'s SOF ¶ 12.)  That same day, Li Xiaomin and Anthony Maurer (on behalf of Plaintiff) entered into the Software License Agreement between Plaintiff and Defendant.  (*Id.* ¶ 13.)

Section 2.1 of the Software License Agreement grants a license from Plaintiff to Defendant of the "Licensed Property," which consists of software owned or held by Plaintiff, described as "eDNA service, interfaces and clients, subject to relevant United States and Chinese import/export laws and restrictions."  (*Id.* ¶ 16.)  That section of the Software License Agreement further provides "[r]oyalties and pricing for sales in the People's Republic of China shall be established by mutual agreement in writing between [Plaintiff] and [Defendant].  The royalties and pricing must be renewed annually.  Grant of this license and rights is contingent on this mutual agreement."  (*Id.* ¶ 17.)  The royalty agreement in Section 2.1 of the Software License Agreement provides that Plaintiff grants Defendant "a non-transferable right and license" and included a requirement for a written annual agreement on royalties and pricing.  (*Id.* ¶ 18.)  The waiver provision, Section 8.5 of the Software License Agreement, further provides:

> The failure of any party at any time to require performance by the other party of any provision hereof shall in no way affect the right to require such performance in full at any time thereafter.  Nor shall the waiver by any party of a breach of any provision hereof constitute a waiver of the provision itself.  Any waiver hereunder shall be in writing and executed by an officer of the party agreement to such waiver.

(*Id.* ¶ 19.)  Additionally, the Software License Agreement states in Section 8.8 that "This agreement embodies all of the terms and conditions of the agreement between the parties with respect to the matters set forth herein and supersedes any and all prior or

4

contemporaneous agreements, representations, understandings or discussions of any kind between the parties in respect of the subject matter hereof." (*Id.* ¶ 20.)

The "Statement of Xiaomin Li" was filed in support of Defendant's Motion to Dismiss; it was submitted with a Chinese-language "Joint Venture Agreement as maintained in the governmental offices in China" and allegedly signed by Plaintiff's representative, John Kalanik. (*Id.* ¶ 24.) The Statement of Xiaomin Li was also submitted with an unsigned "true and correct translation" of the putative agreement in English. (*Id.*) However, there are errors in the English translation, including the omission of the date. (*Id.* ¶ 26.) Additionally, the Chinese version and English version differ on whether or not Plaintiff may appoint members to the board of directors. (*Id.*) Nothing in any version of any draft or putative version of the Joint Venture Contract refers to the Software License Agreement or purports to modify any of its provisions or the requirement of § 2.1 of the Software License Agreement that the parties reach and annually renew a written agreement on royalties and pricing. (*Id.* ¶ 28.) Plaintiff has not received royalties or other revenue from Defendant's licensing of Plaintiff's eDNA software. (*Id.* ¶ 30.) Plaintiff claims it did not sign or authorize anyone to sign the Chinese version of the Joint Venture Agreement, and the English version is unsigned; Defendant disputes this.

On May 6, 2011, Plaintiff sent Defendant a cover letter and "Schedule for Royalties and Pricing for Sales in the People's Republic of China," proposing terms for customer pricing. (*Id.* ¶ 34.) The letter further provided, in pertinent part:

> "We refer to the Software License Agreement, dated as of May 4, 2007, between you and us (the 'SLA') Pursuant to

> Section 2.1 of the SLA, accompanying this letter is a Schedule for Royalties and Pricing for Sales in the People's Republic of China (the "Schedule"). The Schedule reflects our royalties and pricing for the software licensed to you under the SLA, as well as the associated pricing for maintenance and support. These royalties and pricing have been generally accepted in the marketplace and are fair and reasonable for the rights granted and services performed. The royalties and pricing are effective as of May 1, 2011. Failure to accept the Schedule by executing and returning a copy to us within four (4) business days of the date of this letter will be deemed a rejection of our royalties and pricing, which as you know, must be renewed annually and upon which the SLA is contingent. Unless we mutually agree on these terms, the SLA and the rights therefore will cease to have further effect on the fifth (5th) business day following the date of this letter.

(*Id.* ¶ 35.) Defendant rejected the proposed Schedule for Royalties and Pricing. (*Id.* ¶ 37.) Plaintiff terminated the Software License Agreement by a letter, effective May 13, 2011. (*Id.* ¶ 40.) Defendant disputes the termination of the agreement and argues Plaintiff failed to fulfill its duties under the Joint Venture Agreement.

## LEGAL STANDARD

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying the evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). If the moving party meets this burden, the nonmoving party cannot rest on conclusory pleadings but, rather, "must present sufficient evidence to show the existence of each

element of its case on which it will bear the burden at trial." *Serfecz v. Jewel Food Stores*, 67 F.3d 591, 596 (7th Cir. 1995) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986)). A mere scintilla of evidence is not enough to oppose a motion for summary judgment, nor is a metaphysical doubt as to the material facts. *Robin v. Espo Eng. Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000) (citations omitted). Rather, the evidence must be such "that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (*Anderson*)).

In considering a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005) (citing *Anderson*, 477 U.S. at 255). The court does not make credibility determinations or weigh conflicting evidence. *Id.*

Under 28 U.S.C. § 2201(a), the Declaratory Judgment Act, a court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." A district court has discretion to determine whether to consider a suit under the Declaratory Judgment Act. *Wilton v. Seven Falls Co.,* 515 U.S. 277, 282 (1995) (citations omitted). "As long as a live controversy exists between the parties, the district court has discretion to declare the rights of the parties." *Northfield Ins. Co. v. City of Waukegan*, 701 F.3d 1124, 1134 (7th Cir. 2012).

# ANALYSIS

Plaintiff moves for summary judgment, seeking a declaration that the May 4, 2007 Software License Agreement was terminated, effective May 13, 2011, thereby terminating Defendant's license and rights to the Licensed Property. Defendant argues summary judgment for Plaintiff is not warranted, contending that Plaintiff's conduct "amounted to both a breach of its existing obligations at the time . . . and an anticipatory breach of its obligations with regard to future performance." (Def.'s Resp. at 5.) This breach on the part of Plaintiff was so material, Defendant argues, that it precludes a declaration in Plaintiff's favor. (*Id.* at 6.) Essentially, Defendant relies upon the Joint Venture Contract, which Defendant claims supersedes the Software License Agreement's requirements regarding renewal and pricing.

It is apparent from the statement of facts that the Software License Agreement alone governed Defendant's right to license the software at issue. Defendant asserts the Joint Venture Agreement "imposed fiduciary obligations on both the parties and their principals . . . ." (Def.'s Resp. at 12.) However, the Software License Agreement provides that the contract "embodie[d] all of the terms and conditions of the agreement between the parties with respect to the matters set forth herein and supersedes any and all prior or contemporaneous agreements, representations, understandings or discussions of any kind between the parties" regarding the subject matter of the Software License Agreement. (Software License Agreement § 8.8.) "[W]here parties formally include an integration clause in their contract, they are explicitly manifesting their intention to protect themselves against misinterpretations which might arise from extrinsic evidence."

8

*TAS Distributing Co., Inc. v. Cummins Engine Co., Inc.*, 491 F.3d 625, 636 (7th Cir. 2007) (quoting *Air Safety, Inc. v. Teachers Realty Corp.*, 706 N.E. 2d 882, 885 (Ill. 1999)). Thus, in reviewing the terms of an agreement that contains an integration clause, like the clause in the Software License Agreement, the "four corners rule" applies, and extrinsic evidence need not be considered. *Id.*

As set out above, the Software License Agreement provides that royalties and pricing are established by written agreement between Plaintiff and Defendant and that the royalties and pricing "must be renewed annually. Grant of this license and rights is contingent on this mutual agreement." (Software License Agreement § 2.1.) Plaintiff provided Defendant a proposed Schedule for Royalties and Pricing on May 6, 2011, and stated that the rights granted to Defendant under the Software License Agreement would terminate on May 13, 2011, four business days later, if Defendant rejected the proposed royalties and pricing terms. (56.1(a)(3) Statement Ex. 5.) Defendant did not accept the proposed royalties and pricing terms. Because the grant of the license to Defendant was expressly contingent on a mutual agreement on royalties and pricing, the parties' failure to agree to royalty terms resulted in the termination of the Software License Agreement. Whatever reasons Defendant seeks to introduce to explain this failure to come to agreement on the royalty terms, including a "drastic" increase in price and the possibility

that Defendant would no longer be granted exclusive licensing rights, are irrelevant.[2] The simple fact is that the parties *did not* come to agreement as to the royalties and pricing in 2011; this failure to agree on terms resulted in a termination of the Software License Agreement, which was expressly contingent on the parties' agreement on royalty terms.

Defendant's attempts to avoid this result by relying on the Joint Venture Agreement, which it claims governs the relationship between Defendant and Plaintiff, are unavailing. (Def.'s Resp. at 11.) Defendant argues that the "Joint Venture Agreement and Software License Agreement were part of a single transaction" and that, therefore, the agreements should be considered in tandem. (*Id.* at 12.) However, while the agreements related to the same transaction, neither agreement incorporated the other by reference, and the parties to each agreement were not entirely the same. *See Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 663 (7th Cir. 2002) (considering two agreements and stating upon review that "these agreements were both necessary, but self-contained, as components of a comprehensive business transaction. While the contracts are related, they are not two sections of the same agreement; they are separate, free-standing contracts. Each contract delineates rights and duties independent of the other and that pertain to a particular subject matter. One contract may be fully performed while the

---

[2] Defendant seems to suggest Plaintiff violated an implied covenant of good faith and fair dealing in the Software License Agreement. However, Defendant never raised this as an affirmative defense, nor asserted it as a counterclaim; it is therefore waived. The Federal Rules of Civil Procedure require all affirmative defenses to be expressly pleaded; otherwise, a defendant waives its right to rely on such defenses. *See* Fed. R. Civ. P. 8(c). Moreover, even if Defendant had not waived this defense, Defendant failed to present any facts in support of a finding of a violation of the implied covenant of good faith.

other is breached. . . ." and determining that the two agreements were complete on their own.). Similarly, here, Defendant fails to demonstrate how the two agreements should be construed as a single transaction. Moreover, this is contrary to the clearly expressed integration clause of the Software License Agreement, as explained above. Absent ambiguity in the terms of the Software License Agreement, the parol evidence rule bars consideration of other agreements. The duties imposed upon Plaintiff by the Joint Venture Agreement are therefore irrelevant to the analysis of the Software License Agreement.

Because the parties failed to come to an agreement on the royalty and pricing terms, the Software License Agreement and underlying grant of license and rights to the Licensed Property to Defendant were terminated effective May 13, 2011.

## CONCLUSION

In light of the foregoing analysis, Plaintiff's Motion for Summary Judgment is granted. Therefore, a declaratory judgment is entered, finding that the Software License Agreement was terminated effective May 13, 2011.

Date: April 2, 2013

JOHN W. DARRAH
United States District Court Judge